Arguments not to receive 15 minutes in time and Mr. Ward with an appellant on the leave. Thank you. May it please the court. My name is Ashley Ward. On behalf of the appellant, Virginia Surety Corporation, we would request to reserve four minutes, your honor, for rebuttal. Thank you. Your honor, on behalf of the appellant, we would respectfully request that this court reverse the trial court's decision that the liquor liability exclusion in question was ambiguous and instead remand the case with directions that Virginia Surety's motion for summary judgment be granted. That being that the liquor liability exclusion did in fact apply to the underlying wrongful death case so that Virginia Surety owed no duty to defend or indemnity to its insured Kentucky Speedway. I think the court understands the interesting legal issue in this case is that based upon the liquor liability exclusion that the insured is in the business of manufacturing, selling, serving, furnishing alcohol. Whether that exclusion applied to the particular facts of this wrongful death case where this gentleman had come to the Speedway, our insured, and had been served alcohol by a vendor, a non-employee of the insured, became intoxicated, was intoxicated, and should have been cut off so as to not then end up injuring and killing this other person. I think the key component here is, your honor, is that an insurance company has to look at the threshold four corners of the wrongful death complaint and determine, does this complaint, if taken as true, allege allegations against the insured that would fall within this exclusion? And that's where they have to stand. And significantly, in this wrongful death case, it alleged that the insured Speedway, that the folks who sold the alcohol, DJs, they were an agent of Speedway, they were a joint venturer of Speedway. But doesn't Speedway have its own position that it is not in a joint venture, and it does not have an agent, and it is not in the business of selling alcohol, and you are the insurance company representing Speedway, so don't you have a duty to consider things somewhat from your client's perspective? And you have the duty to defend issue, and you have the ultimate, there's the ultimate question, if Speedway is found or settles, whether or not your insurance covers them. So I'm not, it seems to me that it's hard to say, well, we just look at the person's complaint where the person died, their estate's complaint, and see what they're alleging, and that that would be dispositive in the end of your, what the scope of your exclusion is. I understand the court's concern, but once again, the law in Kentucky and in all these other jurisdictions that we've relied upon, this threshold decision, do we owe a duty to defend, is based upon the allegations as made in the complaint. And what about other information that you know about? Well, you're right, Your Honor. In this case, we had some other information, such as we looked at the concessionaire agreement itself. But the law tells us that it's not up to the insurance company to then make this threshold decision on the merits of whether this is a valid claim, it's a good claim, the claim's going to survive summary judgment. Even with the knowledge of what the agreements themselves say, the cases tell us that our duty to determine this defense is based on the allegations in the complaint. And I raise that because if the opposite was true, if an insurance company looked at the face of the complaint and said, I don't think that their plaintiff's ever going to be able to prove negligence, I don't think they're ever going to be able to prove causation, and therefore I'm not going to cover this, the insured would say, wait a minute, you've got to take the face of the complaint and you owe me a defense. You can't become the judge and jury on whether or not one day they're going to succeed or not. And that's what they've done here. It just happened that we do that in the face of not only applying coverage, but whether the exclusion applies. And I will say that the two cases we've cited, we all looked real hard in trying to find a case that was right on point where somebody used a vendor to sell alcohol. We don't have those. But we cited two different cases that applied the very same liquor liability exclusion. So courts have been asked to apply this. And in the Essex versus Tri-Area Amusement case, federal district judge in West Virginia, same provision. There, there was a bar owner, they served the alcohol, and a fellow that provided pool tables, dart boards, and jukeboxes. Well, there the court found that because the plaintiff alleged, what? The plaintiff in the wrongful death case said the jukebox salesman was a joint venturer and that that bar owner was his agent on the face of the complaint, that it was appropriate for the insurance company to determine as a matter of law that the amusement company was in the business of selling, furnishing, and supplying alcohol. That the bar owner was his agent. Do you, under your theory, do you ever become liable for the cost of the defense? We, well, not under the liquor liability policy we may not. For example, Judge, I was thinking about that. Sir? Well, according to you, the allegations in the complaint govern, and even if it should come out, new facts should come out that would alter the legal conclusion, you still, they don't count. That's right, Your Honor. As it relates to the duty to defend, that's the threshold decision we make. Now, for example, Your Honor, in this case. Go ahead, yes, ma'am. So that means, then, that any time there's a complaint filed that makes an allegation, you escape having to defend. So when would you defend? If there were allegations ultimately made in this case that would take it outside of this exclusion. Ultimately made, what do you mean? If there was an amended complaint or if the case starts developing, is that what you mean? For example, Your Honor, if through the course of this case there was an amended complaint and there actually had been an allegation made that took it outside of this exclusion, then we would continue to evaluate that. And, for example, in this case, we continued to talk to the insured's lawyer. It was basically kind of left open. Because, remember, the insured's lawyer even said, give me a preliminary decision, don't make it final yet. And through the course of this matter, even once this firm was defending the insured, they wrote us another letter and said, there's a potential claim that we had negligence security at the racetrack. But that was never alleged in the complaint. And there was never an amended complaint. And we gave them a second shot at that. And my claims counsel reevaluated that, coverage counsel did, and said, no, that still doesn't take us outside of this exclusion. I was surprised at the claim. Yes, sir. The claim was so limited to liquor liability when I can foresee all sorts of claims that would apply to a general liability policy that you have. Yes, sir. But you say the law in Kentucky, as you look at the complaint, that's the way we do it in Michigan, too. Is the law in Kentucky, as it is in Michigan, if there is arguable coverage under the allegations in the complaint, then there's a duty to defend? That's right, Your Honor. If reading the complaint there would be an arguable claim, then there would be a duty to defend. How about here? I mean, this is a liquor ‑‑ I say this is a liquor liability claim. Is there a liquor liability insurance company somewhere around? Well, what there was in this situation is that Speedway, knowing they weren't serving alcohol but they had vendors who were, they made sure that they were made an additional insured on the vendor's policy. So the vendor does have a liquor liability. The vendor had a liquor liability policy. The vendor got sued. The vendor paid the vast majority of this claim. That's what you would think would happen in a liquor liability claim. And our folks kept saying to the insured, well, you know, tender this to the liquor liability folks, the folks serving the alcohol, that you're an additional insured. Okay. Did they defend Speedway or not? They did not. Why not? They took the opposite position and said, gee, I think this complaint that you all see is making some general negligence claim against the Speedway. Has Speedway asserted a claim against the liquor liability? No, sir, they did not. Failing to defend and indemnify? That's correct, Your Honor. They did not. The only folks they came after, even after saying to us, we're making a tender to the vendor's insurance company, and even after it was denied, the only folks they came after and sued and said, we acted in bad faith, were my folks who had a specific liquor liability exclusion when, in fact, they were named additional insured on two different people's policies, Outback Steakhouse and DJ's. Those folks said, not going to defend you, and they didn't go after them. And that's who paid the majority of the settlement in the wrongful death case, as it should have been. Aside from the penalties that they won, I guess, under Kentucky law, how much is at stake here? Yes, Your Honor. I mean, it strikes me that what's involved here is almost not worth setting foot in this courthouse. I understand, Your Honor. The underlying, they paid $10,000 to settle. Their attorney's fees were approximately $74,000. With interest, Your Honor, we're here talking about a $97,000 issue currently. It doesn't include the bad faith claim, right? Without the bad faith claim, which is here. But the interest is accumulated because you haven't paid it. I'm just trying to understand. As you're concerned, if I was sitting in the district court, I'd turn the microphones off and say, what's going on here? Why are you, what is this all? It doesn't pay to litigate a case in federal court over this amount of money. I understand, Your Honor. I feel it's costing your client a considerable amount. It is, Your Honor. And as the court is well aware, there's a whole settlement process through the Sixth Circuit, and we did, our parties respectfully exhausted those efforts. You know, I've got an insurance company who's really pretty serious about the application of this. As I said, there's not a lot of law directly on point as it relates to this vendor issue. I've always thought that, you know, if insurance companies don't like the way courts construe a particular clause in an agreement, the next time they write it, they'll take it. Yeah, they write, they change their exclusion. Exactly. Yes, sir. I don't see this litigating over principle. I appreciate that, Your Honor. I'm just trying to understand what's really going on. I appreciate that. I know. Yes, sir. I was a little confused by the ruling of Judge Bertelsmann. He said that the exclusion was ambiguous and, therefore, Speedway is entitled to summary judgment. I would think if there's issues of fact, that rather than summary judgment for the plaintiff, that it would go to trial for resolution of the issues of fact. But was the ruling that because it's ambiguous and it's because it was drafted by the insurance company, it's construed against the insurance company? Is that how I read it? That's right, Your Honor. Basically, without saying whether it does apply or doesn't apply, he said it's ambiguous. Not because of factual distinction of whether there's some facts that would control it, but the language itself is ambiguous. Is that the ruling? He was saying, of course, there's no definition of what it means to be in the business of manufacturing or furnishing alcohol. And he said, based upon these facts with this vendor involved, it doesn't define it. So I'm going to find all this to be ambiguous. Err on the side, rule construed against the insurance company. Then he granted their summary judgment on the whole coverage question. But you're right, Your Honor. Whether that means we ought to have us a trial on what all that means on the merits would be a way to reverse it also. Thank you. Thank you, Judge. May it please the court. Richard Meyer here for Kentucky Speedway. I'd like to begin by answering your question, Judge Griffin, as to why we went after Virginia Surety rather than the liquor liability carrier for OS and DJs. I think you know who those parties are. The reason is basically that the liquor liability policy was liquor liability only and not premises liability. We were the additional insured. Didn't pay a premium. We were the additional insured on that policy. We're the named insured on this policy. And we paid the premium for this policy. The position that Virginia Surety put us in was, who do we sue? Should have never, ever been in that position of who do we sue to get insurance coverage. Here's why. There is a debate in the law as to whether you can look outside the policy for known facts in determining the duty to defend. It's not an issue in Kentucky, but it's an issue nationally. You have to anticipate claims that haven't been filed against you? No. I don't understand. What do you mean? No. It's a subsidiary issue in this case as to whether an insurance company looks outside the complaint. Because in this case, if you simply look inside the complaint as to what the various allegations and claims were that were made against Speedway, you'll see right off the bat, inartfully drafted as it was, that there are dram shop claims based on an agency or joint venture allegation between the Speedway and DJs. On the one hand, and on the other hand, there are premises liability claims. I don't see any premises liability claim here. I see a breach of a duty not to serve this guy alcoholic beverage. Tell me where it says there's a breach of duty as to premises liability that's independent of serving alcohol. That it is independent of? Of serving alcohol. Where is that? That's a different question. It's a compound question. I'll try to answer it. One is dram shop. Serving alcohol is dram shop liability. Premise liability usually is something other than that, and there is nothing other than dram shop here, is there? Yes, there is. I've got the complaint in front of me. Tell me what paragraph. Your Honor, in the fourth brief, and I don't mean to put you off here, but in the fourth brief, we mentioned three paragraphs, and I think I'll say one of them. Paragraph number seven. Get the complaint out and tell me what paragraph you claim they breach of duty other than dram shop. I'll wait for you. I can tell you the essence of what it says. The essence of what it says is you have a duty to protect. I want to know what it says. What's the paragraph? Your Honor. What's the paragraph? Here's the second brief. I'll run through them as we did in our brief. The first one is paragraph five, and that is a dram shop liability claim alleging a joint venture or an agency relationship. Paragraph seven alleges create an unreasonable risk of harm to Cynthia Bivens by not properly, well, I mean, it's very vague, by not controlling the conduct of those serving. By not controlling those serving alcoholic beverages to prevent an unreasonable risk, okay? That's dram shop, okay? I mean, you go through them all. I'd say they're all, just tell me which one's not dram shop. That is not a dram shop. Paragraph seven is not a dram shop claim. You don't read that? Had a duty to control the serving of alcohol is not a dram shop claim? Okay, now. Is that what you're saying? Compare that allegation to the contents of the exclusion. And the contents of the exclusion do not say may be held liable, the insured may be held liable by reason of controlling somebody else who's selling alcohol. It says, for the exclusion to apply, the insured must be in a position to be held liable by reason of serving or furnishing an alcoholic beverage to an intoxicated person. Seven does not meet the description of the exclusion. Now, we can talk broadly about dram shop liability, but this exclusion is on its face narrow and secondly, by Kentucky law, must be construed narrowly. And granted, your honor, that's exactly what VSI did from day one was to say, because this complaint talks about alcohol, therefore, any claim must be excluded. I ask you to consider seriously the testimony of the people who handled this claim. Wayne Baliga, the corporate representative of VSI said, that is not the way we do claims. Just because it involved alcohol does not make this exclusion operable. Secondly, he said, you must look at each allegation of the complaint, match it to the exclusion to see whether or not the exclusion is applicable. This is Wayne Baliga. Here's the corporate representative of the company saying, we did it wrong. And yes, they did do it wrong. They took a very broad brush approach to what an exclusion is, and you know what? You know that's contrary to Kentucky law. It's contrary to law anywhere in the United States. Exclusions are to be construed narrowly, not expansively. The exclusion says the exclusion applies only if you are in the business of selling, serving, or furnishing alcoholic beverages. So is a key part of your contention that there is not a showing that you are in the business of selling, serving, or furnishing alcoholic beverages? Yes, Your Honor, that's true. But I don't want to jump right to the end of business because that skips right over the first prong of the exclusion, and this company can't get over the first prong of the exclusion. But yes, I would say we are not in the business of selling alcohol. If that were the basis, would that be a factual determination that should not be ruled on by summary judgment, which is what Judge Berthelsen did? And would that be grounds to reverse Judge Berthelsen, is that he granted summary judgment, but his basis was on a factual matter that there is a question to ask? No, I don't think he said there was a factual matter. I think he said the facts point in two different directions, and because this exclusion must be various. Because the facts go in two different directions doesn't mean the plaintiff or the insured is entitled to summary judgment. If the facts go in two different directions, there's an issue for the trier of fact normally. I think what he's saying is under insurance law, if an exclusion is ambiguous either in its terms or as applied to a given set of facts, one or the other, if it's ambiguous in its own terms or it's ambiguous in applying to a set of facts, then the insurance company has to provide coverage. That's pretty novel here. There's coverage. It's a Kentucky case, directly on point. There's a factual dispute. Under one set of facts, there's coverage. Under another set of facts, there's not coverage. I would think the normal remedy would be have a trial on those disputed facts that would be the determination of whether there ultimately is coverage or not. Not because there's a factual dispute. Hence, insurance company, you're covered. You have to pay your policy. There's no factual dispute. The facts are that Speedway had no liquor license and it didn't sell the alcohol in the marsh. On the other hand... Didn't they get a percentage of the liquor sales? On the other hand, it got a percentage. Those facts aren't going to change by a trial. Okay. If I get a percentage of the cut, I'm not in that business even though I make revenue on liquor sales? That's correct. And even though I control the hours that liquor can be sold, what events they can be sold, that I'm not in that business? You don't have to report taxes on that or what? Don't have to what? Speedway doesn't have to report taxes on their liquor sales because they're not getting any business revenues? Just having income is not sufficient to put you in the business of selling alcohol. So what test do you think Kentucky law requires us to apply to decide what it means when it says in the business of selling or furnishing alcohol? The test is not clear. That's what Judge Bertelsman said. It isn't clear. The policy doesn't say what it is. These facts point in both directions. But isn't there some minimum standard of what it means to be in the business? Not that I know of. Looking at Kentucky cases, there is? Your Honor, we have looked high and low, both sides here, for a case involving a company which hires a vendor to sell alcohol and that puts them in the business of selling alcohol. They didn't find one. We haven't found one. There's no case out there. So for me to stand up here and say, oh, I've got the answer. I know what being in the business means. I don't have an answer. That's the whole problem with this exclusion. In the circumstances of this case, that's the problem with the exclusion. So your position is if the law in Kentucky isn't clear about what being in the business is and if the insurance contract doesn't have a definition of in the business, then you automatically win. You started off by saying if the law in Kentucky doesn't have a definition. I'm sorry. I don't think that's part of the equation. If the insurance policy uses a term which it does not define, in particular circumstances of a case you could argue both ways, then there's coverage, yes. Because under Kentucky insurance law, not business law, but under insurance law, if an exclusion is ambiguous, it's to be narrowly applied to the insured in order to promote coverage. That's been the law in Kentucky for 50 years. So we have the question then, how can you argue that you're not in the business of selling alcohol simply when you subcontract it out to somebody else, but you're quite happy that that somebody else is doing the selling of alcohol on your premises? Well, there's absolutely no doubt that DJs is selling alcohol. That's their business. I don't doubt that they are in the business. I'm trying to decide whether you're in the business. And what you have to convince me of is that by subcontracting it out to somebody else, you escape being in the business. To my knowledge, there's no bright line rule. I will say this. If you look at the agreement between Think about it as a matter of principle. Why should you not be in the business of selling alcohol when you just give it to somebody else to sell? Because the policy does not say No, but I'm not asking about the policy. I'm asking as a matter of principle, as a matter of thinking about it. Why should you not be in the business if you hire someone else to do it? I'm asking you to live in a state of tension. I understand that. Without a conclusion as to what in the business means. But that's not the insurer's problem. That's the insurer if there's an exclusion. For example, other policies say if you are in the business or if you lease or provide space for someone else to sell alcohol, then the exclusion applies. I'm not in the business of writing these policies. Okay, so thinking about your policy, it says this exclusion applies only if you are in the business of selling, serving, or furnishing alcoholic beverages. So suppose you hire an employee of your own to sell. Would you be in the business of selling alcohol? There's easy cases. So you would be in the business of selling alcohol if you hire your own employee to sell it. Absolutely. Now, we've got a contract that says to OS, you build the facility for selling alcohol, you maintain the facility for serving alcohol, you put your name on it, you hire the people, you fire the people, we have no control over your people. When you have an agreement that says that and ends up with a statement that they're not our agents, which is merely a summary statement of all the things that you've given to OS, which was then assumed by DJs, in those circumstances there's no agency relationship. But didn't you have the right to step in in any given instance and say don't sell to this particular person? If we knew about a specific incident, I would say that under our right to supervise what goes on at our facility, not a dram shop claim, but if we had the right to supervise our facility to make sure that our customers were free from harm, absolutely we can step in as the owner-occupier of those premises and not as the seller of alcohol. Absolutely. Our rights trump those of a vendor on our premises to make sure the customers are safe. Did Leadway retain the right to withhold approval of the prices that were charged for the liquor? I know that we did not have the right to select the beverage and food. We may have had some say. I think we cooperated on the amount of the prices charged. Your Honor, by the way, on that point and the other points that relate to agency, the other side is arguing that you would have to make a very intensive fact examination to determine if there was an agency relationship or not. I say you do not have to. You simply read the document. There are certain known facts in this case on which the decision should have been made. The known facts are, number one, there are premises liability claims in the complaint. Speedway didn't sell the alcohol to Marsh. Speedway had no right to sell alcohol because it had no liquor license and in the agreement with OS, OS had the exclusive right to sell alcohol. So by contract and by Kentucky law, we had no right to sell alcohol at the Speedway. And your red light is on unless there are any further questions. In regard to the cross appeal, the bad faith claim that Judge Bertelsmann granted summary judgment for the insurance company, are you aware of a recent opinion that I wrote, Philadelphia Insurance Indemnity Insurance versus Youth Alive? Yes. Okay. Do you think that impacts this case? I think that the facts in this case, if understood by the way we recite them, that you can't turn Kentucky law on its head, that you can't ignore all the allegations in the complaint but only look at those that fall within the exclusion. If you give a very broad interpretation to an exclusion contrary to Kentucky law, if your own people, and your honors, I ask you very strongly, read the deposition of Baliga and Eisenbarger, the people that handled these claims. This claim was not handled the way VSI normally handles claims. That's in there. They say we do allegation by allegation. We do not. We look at both prongs of the exclusion and not just at the in the business of. And if there's any doubt, we defend and then see what happens at the end. They did just the opposite in this case. In this case, as opposed to your case, there was conscious disregard of procedures and law. They did it a different way. Why is that bad faith? I'm sorry? So they didn't follow. They did it a different way. Why does that make it bad faith? Because the question is whether they were just merely negligent, which is not a bad faith claim, or were they consciously doing what they ordinarily do not do and what is contrary to the insurance principles that they're supposed to follow. So it's a high standard for bad faith, as you pointed out. But the standard is it has to be conscious and not mere negligence, and it has to be for some motive that's to the benefit of the company and not to the insured, and that motive is this. Let's just sit back and let this other company defend, or we're just going to sit back and make Speedway prove that there's coverage with them or with us, and that's taking a great deal of money, and that's a reckless indifference to the rights of the insured. Thank you. A couple points, Your Honors. Judge Moore, to your question of is there a definition out there of what it means to be in the business of, there is this Kentucky Court of Appeals case, auto owners versus the VFW, same policy exclusion as we got here, and the court went ahead and tried to find ways to define in the business of. Any regular activity occurring to one's time and intention, an activity with a direct profit objective, I'm sorry. So sure, they, the Speedway, want to have alcohol served at these races. Their president basically admitted, I can't imagine one where we wouldn't want to have alcohol served. And the only difference is they use an independent contractor to do it. Right. But the real question is, is that a critical difference in defining whether they are in the business of serving alcohol? Because, you know, I was arguing it one way with him, and I'm going to argue it the other way with you, and then everyone will have to guess which way I will come out. But the question is, why not be able to say, we don't want to have to deal with alcohol problems. We know that our customers want alcohol, so we're going to make it available to them, but we're going to have the X, Y, Z company doing everything having to do with alcohol. So how could we possibly be in the business of serving alcohol under that somewhat hypothetical situation? I understand. It's still to their benefit. This is being done to their benefit. It's not as if the vendor is involved. But that doesn't make them in the business because it's for their benefit. I think it does. It puts them in the business of having alcohol provided at their facility. If I went to eat dinner at the Montgomery Inn Boathouse last night in the bar, I served a drink, and they said, oh, your bartender is an independent contractor. She gets a 1099 and not a W-2. We're not in the business. It's still to the boathouse's benefit that I'm in there having alcohol with dinner or at the Reds baseball game. So I think that just because you use an independent contractor, you can be in the business of serving alcohol, even if they're not on your payroll. Here there's actual elements of control of this subcontractor, right? There's a lot of it. There's a lot of control. I mean, they get to approve who the manager is. They get to talk about how they're trained. They get to have them do other things for the Speedway. The Speedway decides when we serve alcohol, when we shut off alcohol. So there is this level of control. And as your honors indicated, if we're really going to get into this discussion about agency law, we all know that agency is very fact-intensive, and yet to hear their story, they just ought to get some re-judgment on because I'm not an agent. Is anyone disputing factual issues, or is it not the legal conclusions that are to be drawn from the acknowledged facts? I don't know that there's a dispute about how much money they make or who controls who. So we take this set of facts as a given and then decide, is the exclusion applicable or not? That's true, and once again, to finish up. That's not what Judge Bertelsman did. He found it to be ambiguous. He said because it's ambiguous, there is coverage. He just defaulted to coverage. I'm not saying these facts, as a matter of law, establish this or that. He's saying it's not clear. That's correct. And I will say that the direction there, once again, on this very question, in this Essex case and this BP Federated Insurance Company case, both cited same policy exclusion question. But in both cases, BP, who just has their sign at a convenience store, they were alleged that the seller of the alcohol was BP's agent. And the court, once again, said by the allegation in the wrongful death case that the seller of the alcohol was BP's agent, that that was good enough to say they were a server of alcohol as a matter of law under this policy. And in that case, BP ultimately got directed verdict at trial in that wrongful death case. Just like I suspect the Speedway said, if I'd gone to trial, I might get directed verdict. But on the insurance coverage part, the South Carolina Court of Appeals said, as a matter of law, when they were alleged to be an agent, then they were the server of alcohol for purposes of this liquor liability exclusion, on this very question we're talking about. So could you hypothetically win on the duty to defend claim but lose on the payment of the $10,000 that was paid? That's a question. Yes, ma'am. No, I don't think so. I think if we don't owe a duty to defend, then we don't have any obligation to pay indemnity either. Duty to defend is usually broader than the... It's broader than the... That's correct. That's correct, Your Honor. But the duty to indemnify... I'm not an insurance law expert, so these are questions. The duty to indemnify would happen after there was a jury verdict, hypothetically, whereas your duty to defend, you're saying you're just looking at the complaint. Complaint. So there are two different sets of facts that govern whether you have a duty to defend on the one hand and a duty to pay on the other. Am I missing something here? You're right. On indemnification, you can ultimately look to the ultimate judicial determination to help you then determine, do I owe money or not? But as Judge Griffin says, duty to defend is broader, and therefore, I believe, encompasses this indemnity. Well, I understand it's broader, but the question is, what set of facts do you look at to decide this broader duty? For indemnity, you could ultimately look at everything that is presented at the trial of the case, for example, or in a judicial determination. But these folks had to make the threshold question, do I owe this insured a defense? Based on the four corners of this complaint. Are you familiar with this Lemming v. Commercial Insurance Company case of the Sixth Circuit, which said, I believe, construing Kentucky law, that the determination of whether a defense is required must be made at the outset of the litigation by reference to the complaint and known facts. I saw that last night, Your Honor. I did. I'm aware of that, and it made reference to a Kentucky appellate case. And I saw that, and when I read the Kentucky appellate case, I didn't see it talk about unknown facts. I saw it talk about the four corners of the document. What are we bound by, our own construction of Kentucky law or the Kentucky case? I think this panel has the opportunity to interpret what it believes Kentucky law to be, just as that panel interpreted what they thought Kentucky law was. Well, if Kentucky law changed at all since that panel decision, I don't know if it's published or not, by the way. If it's unpublished, it's not precedent anyway. It's published. If Kentucky law changes or involves at all between our panel decision interpreting Kentucky law and today, we have to follow Kentucky. We are not bound by our decisions of Kentucky law if there is any intervening change. Yes, sir. So we have to look at the current status of Kentucky law. That's why we often don't publish opinions that construe state law because the state law evolves. Yes, sir. Has the state law changed since 2001? No, ma'am. I'm not aware of any cases that would have changed this law in Kentucky, that the threshold question of a duty to defend is based upon a review of the allegations made in the four corners of the complaint. Well, and known facts. As interpreted by the Sixth Circuit, yes, Your Honor. But it cites that James Brown Graham case, the Kentucky appellate case, and my review of that case doesn't talk about and known facts. I'm kind of still struggling. So you're saying that the Lenning case was wrong when it was decided, but the problem that you run into then is that the Sixth Circuit is bound by prior published opinions unless the law has changed. So even if we were to agree with you totally that the Lenning case is absolutely wrong, the best we could do would be to say this is an unbunkable offense, and it is usually doubtful that a matter of state law would be an unbunkable offense. Yes, ma'am. We save that for other things. Is that, though? I'm not familiar with the decision. Is that the holding of the case, of the Sixth Circuit case? There's language to that effect. No, I know it's language. Is it dicta or is it holding? I mean, we're only bound by holdings of our . . . I'd have to . . . I can't really specifically answer that, Your Honor. I apologize. I would say, though, even if unknown facts is the standard, if that's the standard, I would submit that with the facts that we knew, the Speedway is still in the business of serving and furnishing alcohol by and through its vendors as a matter of law. Thank you. Thank you, Your Honor. Thank you both for the argument. The case will be submitted. Would the clerk call the next case, please?